# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-019

Filing Date: April 23, 2009

Docket No. 31,119

STATE OF NEW MEXICO,

       Plaintiff-Petitioner,

v.

MARYLYN PIERI,

       Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Stephen Bridgforth, District Judge

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Petitioner

Hugh W. Dangler, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Respondent

## OPINION

**CHÁVEZ, Chief Justice.**

{1}    In *Eller v. State*, 92 N.M. 52, 582 P.2d 824 (1978), a three-member majority of this Court held that when a trial court rejects a sentencing recommendation in a plea agreement, it must give the defendant an opportunity to withdraw his or her plea pursuant to former New

Mexico Rule of Criminal Procedure 21(g)(4), the predecessor to Rule 5-304(D) NMRA.[1] Because the authority we relied upon to support our conclusion in *Eller* has changed and because the weight of authority in other jurisdictions is contrary to *Eller*'s holding, we conclude that *Eller* must be overruled. We hold that a court is not required to afford a defendant the opportunity to withdraw his or her plea when it rejects a sentencing recommendation or a defendant's unopposed sentencing request, so long as the defendant has been informed that the sentencing recommendation or request is not binding upon the court. However, if the defendant and the State have bargained for a specific sentence and the court rejects the specific sentence, the court must give the defendant an opportunity to withdraw his or her plea agreement.

## I.     BACKGROUND

**{2}**     In a written plea agreement, Defendant Marylyn Pieri pled no contest to one count of failure to report child abuse or neglect, a misdemeanor, and one count of negligently permitting child abuse not resulting in death or great bodily harm, a third degree felony, in exchange for the dismissal of one count of contributing to the delinquency of a minor, a fourth degree felony. The written agreement set out the maximum sentences for these two crimes and also provided that "[t]here are no agreements as to sentencing." At a change of plea hearing, however, Defendant informed the district court that the State had further agreed not to oppose Defendant's request for a suspended sentence on the condition that she give a truthful statement to the District Attorney's office and testify truthfully in the State's case against her husband. In response, the district court asked Defendant if she understood "that the agreements the attorneys make, certainly those agreements that might discuss the form of sentence the Court is to enter, are matters that the Court seriously considers, but that they are not binding on the Court[.]" Defendant responded, "Yes, sir." The district court then accepted Defendant's plea and subsequently set a sentencing hearing.

**{3}**     Defendant was never provided the opportunity to testify against her husband because the district court denied the parties' second joint motion to continue the sentencing hearing until after her husband went to trial. As a result, during the sentencing hearing, the State

---

[1]Because former Rule of Criminal Procedure 21(g)(4) is identical in material respects to Rule 5-304(D) NMRA, we refer to Rule 5-304(D) throughout this opinion. Rule 5-304(D) states:

> If the court rejects the plea agreement, the court shall inform the parties of this fact, advise the defendant personally in open court that the court is not bound by the plea agreement, afford either party the opportunity to withdraw the agreement and advise the defendant that if the defendant persists in a guilty plea, plea of no contest or guilty but mentally ill the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

2

asserted that it was not bound by its agreement not to oppose Defendant's request for a suspended sentence because Defendant had not satisfied the conditions of their agreement. Defendant argued that the State should be bound by its agreement and could not oppose her request for a suspended sentence. The State nonetheless asked the district court to "send [Defendant] to prison for a period of time and then . . . put her on probation for a period of time." Defendant again objected, arguing that she was entitled to specific performance of the plea agreement under *Santobello v. New York*, 404 U.S. 257 (1971). The district court concluded that "the State is bound by the representation [it] made at the change of plea." However, noting that "this is a particularly egregious case of failing to protect this child[,]" the court imposed the maximum sentences for the two charges, running them consecutively without suspending any portion of either sentence.

**{4}** Defendant appealed to the Court of Appeals, which reversed and remanded the case to the district court "with instructions to either (1) resentence Defendant in conformity with the plea agreement or (2) provide Defendant with an opportunity to withdraw her plea." *State v. Pieri*, No. 27,016, mem. op. at 10 (N.M. Ct. App. Apr. 24, 2008). The Court of Appeals concluded that the district court had accepted the plea agreement to include the State's promise not to oppose Defendant's request for a suspended sentence. *Id.* at 6. It further concluded that "the trial court's later failure to abide by that implicit recommendation [for a suspended sentence] was tantamount to a rejection of the plea agreement." *Id.* Therefore, the Court of Appeals held that once the court rejected the State's implicit recommendation for a suspended sentence, it was required to afford Defendant the opportunity to withdraw her plea under *Eller*. *Id.* at 6-7. By so holding, the Court of Appeals expanded *Eller* to situations where the State had only agreed not to oppose a defendant's sentencing request.

**{5}** The State petitioned this Court for a writ of certiorari, asking us to determine (1) whether *Eller* applies to Defendant's case, and (2) if it does, whether *Eller* should be overruled. We granted the State's petition. *State v. Pieri*, 2008-NMCERT-006, 144 N.M. 381, 188 P.3d 105. We reverse the Court of Appeals' expansion of *Eller*. We hold, however, that under *Santobello* Defendant should have been given the opportunity to withdraw her plea or receive specific performance of the plea agreement and, therefore, remand to the district court to afford Defendant this opportunity. Finally, we accept the State's invitation to revisit *Eller* and conclude that it should be overruled. We hereby refer this matter to the appropriate rules committees to recommend changes to our Rules of Criminal Procedure for the district, magistrate, metropolitan, and municipal courts consistent with this opinion.

## II.    DISCUSSION

### A.    DEFENDANT'S APPEAL IS NOT MOOT

**{6}** On appeal to this Court, Defendant argues that we should quash certiorari and dismiss this appeal because her case is moot. She contends that because she has served her

entire period of incarceration and has been released, an appellate ruling requiring the district court to offer her the chance to withdraw her plea would not provide her with any relief, no controversy exists, and therefore the case is moot. The State urges us to deny Defendant's motion, arguing that Defendant remains on parole and that the collateral consequences of Defendant's felony conviction do not render this case moot.

**{7}** Notwithstanding the validity of the State's arguments, *see, e.g.*, *State v. Sergio B.*, 2002-NMCA-070, ¶ 10, 132 N.M. 375, 48 P.3d 764, the fundamental flaw in Defendant's argument is that the State itself is entitled to seek relief from the Court of Appeals' opinion. "A case is moot when no actual controversy exists, and the court cannot grant actual relief." *Gunaji v. Macias*, 2001-NMSC-028, ¶ 9, 130 N.M. 734, 31 P.3d 1008 (internal quotation marks and citations omitted). The State has petitioned this Court to reverse the Court of Appeals and prevent Defendant from either withdrawing her plea or being resentenced. Because we may grant the State the relief it requests, an actual controversy exists and the case is not moot. *See, e.g., United States v. Suleiman*, 208 F.3d 32, 38 (2d Cir. 2000) (holding that the case was not moot because it was possible that the court could grant relief to the government); *State v. Jordan*, 1998 ME 174, ¶ 13, 716 A.2d 1004, 1007 ("If the defendant has an interest in avoiding the collateral consequences of a conviction, then the State has an equally compelling interest in securing a conviction to effect those consequences.").

**{8}** In addition to asking us to dismiss her case as moot, Defendant asks this Court to allow her to withdraw her appeal and to vacate the Court of Appeals' memorandum opinion. We understand Defendant to be asking us to treat this matter as though she had never filed an appeal—to revoke the relief she would otherwise be granted by the Court of Appeals' opinion and affirm the district court's convictions. At this stage in the proceedings, we are reluctant to grant Defendant's request. Defendant did not move to withdraw her appeal in either the district court or the Court of Appeals, moving instead to dismiss her appeal for the first time in this Court. If she had timely moved to withdraw her appeal in the lower courts, either court could have properly considered that motion. *See* Rule 12-401 NMRA; NMSA 1978, § 39-3-14 (1851-52). However, this matter is now before us on the State's petition for a writ of certiorari, and Defendant cannot now deprive the State of our review of the Court of Appeals' opinion. Therefore, Defendant's motion is untimely and is denied.

### B. *ELLER* IS NOT APPLICABLE TO CASES WHERE THE COURT IGNORES A DEFENDANT'S UNOPPOSED SENTENCING REQUEST

**{9}** At the sentencing hearing, Defendant argued that she should be entitled to specific performance of the plea agreement under *Santobello* because the State had breached its promise not to oppose her request for a suspended sentence. Her request was denied, and she appealed. On direct appeal, the Court of Appeals raised the *Eller* issue sua sponte and asked for supplemental briefing on the application of *Eller*, Rule 5-304, and *State v. Bencomo*, 109 N.M. 724, 790 P.2d 521 (Ct. App. 1990), to Defendant's case. After the parties briefed these additional issues, the Court of Appeals concluded that *Eller* should be

4

expanded to allow Defendant the opportunity to withdraw her plea. *Pieri*, No. 27,016, mem op. at 6-7. We disagree that *Eller* is applicable to Defendant's case.

**{10}** In *Eller*, this Court held that when a trial court rejects the State's sentencing recommendation, it must give the defendant an opportunity to withdraw his or her plea under Rule 5-304(D). 92 N.M. at 54, 582 P.2d at 826. In *Eller*, the State agreed to recommend a sentence and fulfilled its promise to the defendant when it in fact made the recommendation it had agreed to make. Importantly, *Eller* does not describe what remedies are available to a defendant when the State does not perform as promised under the plea agreement. When the State fails to fulfill the promises it makes as part of a plea agreement, the rule in *Santobello* dictates the result. Defendant correctly argued the application of *Santobello* to her case, and we decline to extend *Eller* in order to achieve the same result.

**{11}** Furthermore, there is a significant difference between a plea agreement where the State agrees to make an affirmative sentencing recommendation and one where the State simply agrees to leave the matter of sentencing to the discretion of the judge by not opposing Defendant's request. In the former situation, the State informs the court of what it believes is an appropriate sentence in light of the facts and circumstances of a particular case. In the latter situation, the State has agreed to make no recommendation whatsoever. Thus, the only recommendation the court can be said to have rejected is that of the defendant.

**{12}** In Defendant's case, the Court of Appeals held that the State's promise not to oppose Defendant's request for a suspended sentence was an "implicit recommendation" for that sentence disposition. We disagree. Not all sentence concessions are recommendations. *People v. Dawson*, 89 P.3d 447, 450 (Colo. Ct. App. 2003). The issue in *Dawson* was whether the State's agreement not to recommend an aggravated sentence was the equivalent of a sentence recommendation for the purposes of *People v. Wright*, 573 P.2d 551 (Colo. 1978), which, like *Eller*, held that "a defendant must be given the opportunity to withdraw a guilty plea when the trial court elects not to follow the prosecution's sentence recommendation." 89 P.3d at 450. *Dawson* held that because "[t]he prosecutor made no affirmative recommendation of any sentence favorable to defendant[,]" *Wright* was inapplicable. *Id.* Hence, the defendant was not entitled to withdraw his plea simply because the court had imposed an aggravated sentence when the State had not recommended one. *Id.* Like *Dawson*, the plea agreement in Defendant's case included the State's promise not to recommend a particular sentence, and therefore Defendant should not be allowed to withdraw her plea because she received a sentence that the State did not recommend.

**{13}** We note that this Court relied on *Wright* in deciding *Eller*. 92 N.M. at 54, 582 P.2d at 826. We find the *Dawson* court's refusal to extend *Wright* to situations where the prosecution has not made an affirmative recommendation for a favorable sentence particularly persuasive. We therefore reverse the Court of Appeals' expansion of *Eller* and hold that Rule 5-304(D) does not obligate the court to give a defendant the opportunity to withdraw his or her plea when the State has not opposed the defendant's request for a sentence or has remained silent with respect to the sentencing disposition.

5

## C. DEFENDANT MUST BE OFFERED THE OPPORTUNITY TO WITHDRAW HER PLEA OR BE RESENTENCED BY ANOTHER JUDGE

**{14}** In spite of our conclusion that *Eller* provides Defendant no relief, we conclude that *Santobello* demands she be afforded an opportunity to withdraw her plea or be resentenced by another judge. In *Santobello* the State of New York indicted the defendant on two felony gambling charges. 404 U.S. at 258. The defendant agreed to plead guilty to a lesser offense, and the prosecution agreed to make no recommendation regarding the sentence. *Id.* at 258. The court accepted that plea. *Id.* Due to a series of delays, a second prosecutor represented the State at the sentencing hearing and, apparently unaware of his colleague's promise, recommended the maximum sentence for the lesser offense. *Id.* at 259. The defendant objected. *Id.* The trial judge stated that he was "not at all influenced by what the [d]istrict [a]ttorney sa[id]," concluded that the defendant was a "professional criminal," and sentenced him to the maximum sentence for the offense. *Id.* at 259-60.

**{15}** The United States Supreme Court reversed and held that the defendant did not receive the benefit of his plea bargain because the State affirmatively recommended imprisonment when it had previously promised to make no recommendation at all. *Id.* at 262. The Court reasoned, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* By denying the defendant the benefit of his bargain, the State had not given him the process that was "reasonably due in the circumstances." *Id.* The Court then remanded to the state court to determine whether the defendant should be afforded an opportunity to withdraw his plea or be re-sentenced by a different judge, with the State fulfilling its promise to remain silent during sentencing. *Id.* at 262-63.

**{16}** This is a *Santobello* case. The district court accepted Defendant's plea agreement as including the State's promise not to oppose her request for a suspended sentence on the conditions that she provide a truthful statement to the prosecution in the matter against her husband and testify truthfully in that case. The court implicitly found that those conditions had been satisfied when it held the State to its promise not to oppose Defendant's request for a suspended sentence. Thus, under *Santobello*, when the State opposed the suspended sentence, Defendant should have either been resentenced in front of a different judge or have been allowed to withdraw her plea.

**{17}** On appeal, the State does not argue that Defendant failed to satisfy the conditions necessary to bind the State to its promise not to oppose her request for a suspended sentence. Rather, it argues that Defendant cannot raise this issue as fundamental error because she did not move to withdraw her plea in the district court. We disagree and are not persuaded that a fundamental error analysis is appropriate in Defendant's case. Defendant's objection on *Santobello* grounds was sufficient to alert the court that she should either be afforded specific performance of the plea agreement or be allowed to withdraw her plea. *See Santobello*, 404 U.S. at 263 (remanding to determine whether the defendant should be

resentenced by a different judge or allowed to withdraw his plea). Here, Defendant objected on *Santobello* grounds both before and after the State recommended a term of imprisonment contrary to its promise. These two objections had the effect of alerting the sentencing court to the *Santobello* problem. Although it would have been clearer had Defendant requested the relief she desired under *Santobello*, these timely objections were sufficient to fairly invoke a ruling from the trial court on this issue. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked . . . ."). Therefore, the State's fundamental error analysis is unnecessary.

**{18}** Finally, with respect to *Santobello*, we note that the sentencing judge held the State to its promise and sentenced Defendant as though the State had not in fact recommended imprisonment in violation of the plea agreement. We have no reason to doubt that the judge fairly exercised his discretion in sentencing Defendant to the maximum sentences for the crimes charged. However, it is not the judge's fairness that is at issue. Rather, it is the propriety of the State's recommendations in light of its previous promise not to oppose Defendant's request for a suspended sentence. *See Santobello*, 404 U.S. at 263 (emphasizing that its holding "is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge"). The State argued for a term of imprisonment and gave reasons for its request. The bell had been rung. Because the State breached its promise not to oppose Defendant's request for a suspended sentence, *Santobello* requires reversal, despite the judge's discretion to sentence Defendant in accordance with the offenses charged.

## D. *ELLER* IS OVERRULED

**{19}** Despite our conclusion that *Eller* would not control the outcome in Defendant's case, we accept the State's invitation to overrule *Eller* and amend our Rules of Criminal Procedure. We have the ultimate authority to fashion, adopt, and amend rules of procedure by virtue of the authority granted to this Court in Article III, Section 1 and Article VI, Section 3 of the New Mexico Constitution. *Ammerman v. Hubbard Broadcasting, Inc.*, 89 N.M. 307, 310-11, 551 P.2d 1354, 1357-58 (1976). Therefore, because *Eller* had the effect of modifying Rule 5-304(D), we may properly address its continued validity.

**{20}** The issue this Court addressed in *Eller* was whether the district court's "rejection of a sentencing recommendation contained in a plea agreement amounts to a rejection of a plea agreement under [Rule 5-304(D)]." 92 N.M. at 53, 582 P.2d at 825. To resolve this issue, we had to construe the meaning of the term "plea agreement" as used in Rule 5-304(D) because "[i]f the trial court rejects the 'plea agreement' the defendant must be given an opportunity to withdraw his plea." *Id.*; *see also* Rule 5-304(D) ("If the court rejects the plea agreement, the court shall . . . afford either party the opportunity to withdraw the agreement . . . ."). Our focus in *Eller*, then, was what Rule 5-304(D) of our Rules of Criminal Procedure required, and we held that "the trial court's refusal to follow the sentencing recommendations of the district attorney constitutes a rejection of the plea agreement[.]" 92 N.M. at 54, 582 P.2d at 826. Thus, *Eller* interpreted, explained, and modified Rule 5-

304(D), one of our Rules of Criminal Procedure. Therefore, because we have the ultimate authority to modify our procedural rules, we may change Rule 5-304(D) and overrule those cases that interpret and explain it.

**{21}** Even when modifying our own procedural rules, however, we are mindful of the principles of stare decisis and take care to overrule established precedent only when the circumstances require it. Before overruling a prior case, we must consider several issues:

> 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine; and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification.

*Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 7, 133 N.M. 661, 68 P.3d 901 (internal quotation marks and citations omitted); *accord State v. Martinez*, 2006-NMSC-007, ¶ 28, 139 N.M. 152, 130 P.3d 731. "[W]hen one of the aforementioned circumstances convincingly demonstrates that a past decision is wrong, the Court has not hesitated to overrule even recent precedent." *Padilla*, 2003-NMSC-011, ¶ 7 (internal quotation marks and citation omitted). Because the authority on which we relied to support our conclusion in *Eller* has changed and is contrary to the weight of authority in other jurisdictions, we conclude that *Eller* is unworkable and must be overruled. In its place, we hold that the trial court is not required to afford a defendant the opportunity to withdraw his or her plea when it rejects a sentencing recommendation or a defendant's unopposed sentencing request, as long as the defendant has been informed that the sentencing recommendation or request is not binding upon the court.

**{22}** At the outset of our analysis, we note that *Eller* was not a unanimous opinion. "It was a 3-2 decision of the New Mexico Supreme Court, reversing a 2-1 decision of [the Court of Appeals]." *State v. Bencomo*, 109 N.M. 724, 726, 790 P.2d 521, 523 (Ct. App. 1990). It was also "a clear departure from the case law established by the Court of Appeals in [*State v.*] *Ramos*[, 85 N.M. 438, 512 P.2d 1274 (Ct. App. 1973)] and [*State v.*] *McClarron*[, 85 N.M. 442, 512 P.2d 1278 (Ct. App. 1973)]."[2] Linda Davison, *Eller v. State: Plea Bargaining in New Mexico*, 9 N.M. L. Rev. 167, 171 (Winter 1978-79). This divergence of opinion in *Eller* suggests that its holding was on a less-than-firm footing when it was announced. With this in mind, we consider whether the authority on which *Eller* relied remains in force.

---

[2]Both *Ramos* and *McClarron* were themselves split opinions of the same panel of the Court of Appeals. Although *Eller* did not expressly overrule these two cases, its holding clearly stands in direct conflict with their outcomes.

## 1. The Authority Relied Upon to Support the Conclusion in *Eller* Has Changed

**{23}** The *Eller* Court relied in part on ABA standards that have since changed. *See* 92 N.M. at 54, 582 P.2d at 826 (quoting the Supreme Court of Colorado in *People v. Wright*, 573 P.2d 551, 553 (1978) (en banc), which quoted the commentary from the ABA Standards Relating to the Functions of the Trial Judge, § 34.1(c)). This former standard stated that when the district court rejects the prosecution's sentencing recommendation, the voluntariness of the plea is called into question because "there nevertheless remains at least the taint of false inducement." *Id.* (internal quotation marks and citation omitted). In other words, even if the prosecution only promised to recommend a lighter sentence to the sentencing court, it could not be considered voluntary if the defendant believed he or she had bargained for a specific sentence that was not imposed. Thus, under the former ABA standards, the defendant must be given the right to withdraw his or her plea when a sentencing recommendation is not followed by the court. However, the ABA has since changed course, and its standards now only allow for the withdrawal of a plea in limited situations.

**{24}** Current ABA standards do not allow a defendant to withdraw his or her plea simply because the court did not follow the State's sentencing recommendation. Instead, in such situations, current ABA standards allow the defendant to withdraw his or her plea when:

> [1] the defendant did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement; or

> [2] the defendant did not receive the charge or sentence concessions contemplated by the plea agreement, which was either tentatively or fully concurred in by the court, and the defendant did not affirm the plea after being advised that the court no longer concurred and after being called upon to either affirm or withdraw the plea; or

> [3] the guilty plea was entered upon the express condition, approved by the judge, that the plea could be withdrawn if the charge or sentence concessions were subsequently rejected by the court.

ABA Standards for Criminal Justice § 14-2.1(b)(i)(D)-(F) (3d ed. 1997); *see also id.* at § 14-3.3(e) (3d ed. 1999) (same standards as numbers 2 and 3 above). In addition, current ABA standards also allow a defendant to withdraw his or her *offer* to plead guilty or no contest in exchange for specific charge or sentence concessions if the court determines "that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement[.]" *Id.* at § 14-3.3(e). Thus, the ABA no longer adheres to the principle that a plea agreement is rejected if the sentencing recommendation is not followed. Indeed, the

9

phrase "taint of false inducement" relied upon in *Eller*, 92 N.M. at 54, 582 P.2d at 826 (internal quotation marks and citation omitted), has been deleted from the ABA standards relating to plea agreements altogether.

**{25}**    The ABA standards now follow the general rule that a defendant who has bargained for the recommendation of a specific sentence or a lighter sentence receives the benefit of his or her bargain when the prosecution fulfills that promise and makes its recommendation to the court.

> Where the plea has already been entered, . . . Standard 14-3.3(e) [responsibilities of the judge regarding the withdrawal of pleas] does not automatically permit its withdrawal simply because requested charge or sentence concessions are not received. If, for example, a plea is entered and the prosecutor recommends that the defendant receive a two-year sentence but the court rejects that recommendation, there is no justification for allowing withdrawal of the plea if no promise was made by the judge that this sentence would be received. In these circumstances, the plea agreement is fully discharged by the prosecutorial recommendation of a two-year sentence.

ABA Standards for Criminal Justice, § 14-3.3(e) (1999) cmt. Where the defendant has bargained for a sentence recommendation and the prosecution in fact made the recommendation, he or she received what was bargained for. Therefore, the plea agreement was voluntarily made and the opportunity to withdraw it is no longer required.

**{26}**    In addition to relying on ABA standards that have since changed, the *Eller* Court also relied upon the United States Supreme Court's decision in *Santobello* for the proposition that "[t]he sentencing disposition is an integral part of the [plea] agreement and bears directly upon whether the plea is voluntary." *Eller*, 92 N.M. at 54, 582 P.2d at 826. Like the ABA standards relied upon in *Eller*, the Supreme Court's decision in *Santobello* has evolved in the thirty years since *Eller* was decided and, in hindsight, this Court's reliance on it was misplaced.

**{27}**    As explained above, *Santobello* addressed only the specific issue of whether the State could renege on the promises it made to a defendant as part of the plea agreement. It did not specifically address the issue before the Court in *Eller*:  whether a defendant should be able to withdraw his or her plea if the court rejects the State's sentencing recommendation. *Santobello* held that the State had breached its contract such that the defendant was not given the process that was "reasonably due in the circumstances." 404 U.S. at 262. The majority in *Eller* apparently seized on this due process language and cited *Santobello* for the proposition that "[t]he sentencing disposition is an integral part of the agreement and bears directly upon whether the plea is voluntary." 92 N.M. at 54, 582 P.2d at 826. Thus, it appears that the *Eller* Court understood *Santobello* to mean that due process requires that a defendant be afforded the opportunity to withdraw his or her plea if a sentencing

recommendation is not followed by the court. In the decades since *Santobello* was decided, however, it has become clear that *Santobello* does not stand for such a proposition.

**{28}** It is now clear that *Santobello* only requires that the State fulfill the promises it makes in plea agreements. As one notable authority writes on the subject of such broken promises:

> One kind of promise is a commitment by the prosecutor that he [or she] will recommend or at least not oppose a particular sentence sought by the defendant. If the prosecutor does recommend or not oppose that sentence but the judge imposes a more severe sentence, is the defendant entitled to relief under the *Santobello* rule? Unquestionably the answer is no; there is no broken bargain in such circumstances, for the promise to seek or not oppose the lesser sentence has been kept, and there was no promise that such sentence would actually be imposed.

5 Wayne R. LaFave et al., *Criminal Procedure* § 21.2(d) at 605 (3d ed. 2007) (footnote omitted). Thus, the authorities relied upon in *Eller*—the ABA standards and *Santobello*—may no longer be read to support its conclusion. Because *Eller* was controversial when it was decided and because of the erosion of the foundation upon which it stands, we are compelled to conclude that it no longer remains viable today and should be overruled.

### 2. The Weight of Authority in Other Jurisdictions Is Contrary to *Eller*'s Holding

**{29}** Our decision to overrule *Eller* is also supported by the weight of authority from other jurisdictions, which provides that a defendant is not entitled to withdraw his or her plea when the district court rejects a sentencing recommendation as long as the defendant has been made aware that the sentencing judge is not required to follow the State's recommendations. *See, e.g.*, *State v. Darling*, 506 P.2d 1042, 1044-45 (Ariz. 1973) (in banc); *Goins v. State*, 672 So. 2d 30, 31 (Fla. 1996); *State v. Kingston*, 828 P.2d 908, 910 (Idaho Ct. App. 1992); *Martin v. State*, 635 So. 2d 1352, 1355 (Miss. 1994); *State v. Martz*, 760 P.2d 65, 70 (Mont. 1988); *State v. Griger*, 208 N.W.2d 672, 674-75 (Neb. 1973); *State v. Hanson*, 627 P.2d 53, 55 (Utah 1981). *But see, e.g.*, *State v. Goodrich*, 363 A.2d 425, 426 (N.H. 1976); *Wright*, 573 P.2d at 552-53. We agree with these jurisdictions and hold that if the court rejects a sentence recommendation or a defendant's unopposed sentencing request, and the defendant was aware that the court was not bound by those recommendations or requests, the court need not afford the defendant the opportunity to withdraw his or her plea.

**{30}** Overruling *Eller* and holding as we do in this case promotes transparency in the plea process. There are two basic types of bargained-for sentencing dispositions in plea agreements: (1) an agreement to plead guilty or no contest in exchange for a specific, guaranteed sentence and (2) an agreement where the State promises to recommend a

11

particular sentence or not to oppose the defendant's request for a specific sentence. *See* Fed. R. Crim. P. 11(c)(1)(B)-(C). The distinction between these two agreements is critical because, as we hold in this opinion, the type of plea agreement dictates whether the court is bound to impose the sentence disposition contained in the plea. Under the former, the court must impose the sentence if it has accepted a plea agreement that states the defendant will plead guilty or no contest in exchange for a specific sentence. *See id.* at 11(c)(1)(C). Under the latter agreement, the court is not bound by the sentencing recommendations or requests of the parties; it is the court's responsibility to impose the sentence. *See id.* at 11(c)(1)(B); *see also State v. Taylor*, 107 N.M. 66, 72, 752 P.2d 781, 787 (1988) (noting that, with respect to sentencing recommendations, the trial court "retain[s] the right to accept or reject the plea bargain and make an independent decision regarding the appropriate sentence"), *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 108 N.M. 722, 731, 779 P.2d 99, 108 (1989).

**{31}** *Eller* confused these basic principles with respect to sentencing recommendations and requests. It is clear that, under *Eller,* courts were not required to follow the sentencing recommendations of prosecuting attorneys. However, *Eller* also mandated that the court give the defendant the chance to withdraw the plea if the recommendation was rejected. These potential alternatives have undoubtedly confused defendants since *Eller* became law. By instructing the defendant that the sentence recommendation is not binding on the court, while simultaneously allowing the defendant to withdraw his or her plea as a matter of right if that recommendation is not followed, it is impossible to know what the defendant believed he or she had bargained for during the plea process.

**{32}** In overruling *Eller*, we increase the likelihood that defendants will understand the terms of their plea agreements with respect to sentence recommendations or unopposed sentencing requests. In requiring that the defendant be made aware that the court is not bound by the parties' recommendations and requests, we allow the defendant to negotiate plea agreements with full knowledge of what the result of the bargain will be. Thus, our holding will make plea negotiations more transparent and will improve the likelihood that defendants are entering into plea agreements knowingly and voluntarily.

**{33}** Therefore, we overrule *Eller* and in its place state the following rule: if a court rejects a sentencing recommendation or ignores an unopposed sentencing request, the court need not afford the defendant an opportunity to withdraw the plea, as long as the defendant has been made aware that such recommendations and requests are not binding on the court. We adhere to the requirement of Rule 5-304(D) that if the court accepts a defendant's plea in exchange for a guaranteed, specific sentence and that sentence is not imposed, the court must give the defendant an opportunity to withdraw his or her plea. Our holdings do not affect a defendant's rights under *Santobello*, and it remains the law that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. Finally, we refer this matter to the committees for Rules of Criminal Procedure in the district, magistrate, metropolitan, and municipal courts with instructions to review and

12

amend affected rules and forms to require the court to inquire whether the defendant knows that sentencing recommendations and unopposed sentencing requests are not binding on the court.

**E.     OUR RULING APPLIES TO ALL CASES WHERE THE DEFENDANT HAS NOT YET ENTERED INTO A PLEA AGREEMENT**

**{34}**     We apply our holding prospectively with one limited exception:  our holding also applies to all currently pending cases in which the defendant has not entered into a plea agreement.  Defendants who have already entered into plea agreements will be subject to the rule in *Eller*.  We recognize that this limited exception to an otherwise purely prospective application of our holding has the effect of changing a rule of procedure in pending cases, and we note that this Court has applied Article IV, Section 34 of the New Mexico Constitution to limit the retroactive application of amendments to our rules.  *See Marquez v. Wylie*, 78 N.M. 544, 545-46, 434 P.2d 69, 70-71 (1967).  However, Article IV, Section 34 is inapplicable.

**{35}**     Section 34 provides that "[n]o act of the *legislature* shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case."  N.M. Const. art. IV, § 34 (emphasis added).  In *Marquez*, the Court accepted the broad view that Section 34 also applies to rules promulgated by the Court.  78 N.M. at 546, 434 P.2d at 71.  In so holding, this Court relied partly on language from two Supreme Court orders giving the rules adopted in those orders the same effect as if they had been passed by the Legislature.  *Id.*  The plain language of Section 34 applies to legislative acts only, and while this Court may choose to give its rules the force and effect of legislative acts, we have not done so in this case.  In the absence of some affirmative act by this Court, similar to what occurred in *Marquez*, Section 34 does not apply to rules promulgated by this Court.  Therefore, we apply our holding prospectively with the limited retroactive exception outlined above.

**III.     CONCLUSION**

**{36}**     For the reasons stated in this opinion, *Eller* is overruled.  Our holding in this case applies prospectively and to all pending cases in which the defendant has not entered into a plea agreement.  We reverse the Court of Appeals and remand to the district court for proceedings consistent with this opinion.

**{37}     IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

**WE CONCUR:**

13

_____
**PATRICIO M. SERNA, Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Pieri*, No. 31,119**

| **CA** | **CRIMINAL PROCEDURE** |
|---|---|
| CA-CP | Criminal Procedure, General |
| CA-GP | Guilty Plea |
| CA-NP | Nolo Contendere Plea |
| CA-PP | Plea and Plea Bargaining |
| CA-SJ | Criminal Procedure, Stare Decisis |
| CA-SN | Sentencing |

| **CT** | **CONSTITUTIONAL LAW** |
|---|---|
| CT-MO | Mootness |
| CT-NM | New Mexico Constitution, General |